April M. (Hill) MOUNDZOURIS,
Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 33A01–0209–CR–378.

Court of Appeals of Indiana.

Aug. 8, 2003.

Amy K. Noe, Arnold & Noe, Richmond, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

April M. Hill Moundzouris ("Hill") appeals her convictions for two counts of Welfare Fraud, as Class C felonies. She presents a single issue for our review, namely, whether the State presented sufficient evidence to support her convictions.

We affirm in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

Hill and her former husband, Randy D. Hill ("Randy"), have two children, and Randy was granted sole custody of both children pursuant to a dissolution decree issued in 1995. The dissolution court granted Hill visitation with the children and ordered Hill to pay Randy $30 per week in child support.

Hill has enjoyed extensive visitation with her children, well beyond that provided for in the dissolution decree. Randy routinely drops off the children at Hill's house in the morning and Hill gets them ready for school, and the children often return to Hill's house after school until Randy's work day is over. In addition, the children frequently spend the night at Hill's house and eat many of their daily meals there. During the summer, especially, the children often eat three meals a day at Hill's house. Despite these circumstances, custody of both children has remained with Randy.

On February 9, 1998, Hill applied for Supplemental Security Income ("SSI") because she suffers from interstitial cystitis, which causes chronic inflammation of the bladder. In her SSI application, Hill stated that she lived alone. But in a subsequent application for SSI she submitted on August 30, 1999, Hill stated that both of her children had lived with her since March 1, 1997. And on August 26, 1998, when Hill applied for food stamps, Hill also stated that both of her children lived with her.

On September 9, 1999, Hill applied for SSI for her son, T.H., and she stated in that application that she had custody of T.H. and that both children lived with her. That application, which Hill signed and dated, provided in part that she acknowledged that lying or misrepresenting the truth in the application could result in penalties under state and/or federal law. Hill subsequently admitted to investigators that she did not have custody of T.H.

Hill received SSI from August 1999 until June 2001, with a total benefit of $11,324. And Hill received food stamps from August 26, 1998, until September 30, 1999, with a total benefit of $2,742. The State charged Hill with welfare fraud in obtaining SSI benefits and in obtaining food stamps. A jury found her guilty as charged on both counts, and the trial court entered judgment accordingly. This appeal ensued.

## DISCUSSION AND DECISION

Hill contends that the State presented insufficient evidence to sustain her convictions. In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of witnesses. *Ferrell v. State,* 746 N.E.2d 48, 50 (Ind.2001). We will affirm the conviction unless, considering only the evidence and reasonable inferences favorable to the verdict, we conclude that no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Robertson v. State,* 765 N.E.2d 138, 139 (Ind. 2002).

To convict Hill of welfare fraud, as a Class C felony, the State was required to prove that she knowingly obtained public relief or assistance by means of false or misleading oral or written statements of an amount greater than $2,500. *See* Ind.Code § 35–43–5–7. Hill's sole contention on appeal is that the State did not prove that she knowingly used false or misleading statements to obtain assistance. We address each of Hill's two convictions in turn.

## SSI

■ Indiana Code Section 35–41–2–2 provides in relevant part that a person engages in conduct "knowingly" if she is aware of a high probability that she is doing so. At trial, Hill testified that a social worker told her that custody of the children was not required in order to receive SSI on behalf of T.H., but that she only had to be the "primary caregiver[.]" Hill also testified that when she explained to the social worker that the children "lived with [her] ... [and that she] took care of them[,]" the social worker told her that she would be considered the primary caregiver. In light of that advice from the social worker, Hill maintains that she was not aware of a high probability that she was using false or misleading statements to obtain SSI.

But the State presented undisputed evidence that Hill, in her application for SSI on behalf of T.H., represented to the Social Security Administration that she had custody of T.H. And the undisputed evidence shows that Hill has never had custody of T.H. Thus, the evidence is sufficient to support Hill's conviction for welfare fraud in obtaining SSI benefits. Hill merely asks that we reweigh the evidence, a task not within our prerogative on appeal.

### Food Stamps

■ Hill next contends that she did not knowingly make any misrepresentations in her food stamp application. In that application, submitted on August 26, 1998, Hill represented to the Indiana Family and Social Services Administration Division of Family and Children ("FSSA") that both of her children lived with her. But, unlike the SSI application, the food stamp application does not include any questions regarding custody of the children. And the application is silent concerning whether the children must live with the applicant full-time for her to be eligible for benefits.

The application merely states, in relevant part: "Household Members.... The following individuals live in my household—[.]"

On appeal, the State makes no argument in support of affirming this conviction; the State only addresses Hill's conviction for obtaining SSI benefits. Accordingly, we do not undertake the burden of developing arguments for the State, as that duty remains with the appellee. *See Railing v. Hawkins,* 746 N.E.2d 980, 982 (Ind.Ct. App.2001). Applying a less stringent standard of review, we may reverse the trial court when the appellant establishes prima facie error. *Id.* "Prima facie" is defined as "at first sight, on first appearance, or on the face of it." *Id.* (quoting *Johnson County Rural Elec. Membership Corp. v. Burnell,* 484 N.E.2d 989, 991 (Ind.Ct.App. 1985)). Still, we are obligated to apply the law correctly to the facts in the record to determine whether reversal is required. *Conseco Fin. Servicing Corp. v. Kimberly Mobile Home Park, Inc.,* 780 N.E.2d 852, 854 (Ind.Ct.App.2002). But we will not search the record on appeal. *See, e.g., Keller v. State,* 549 N.E.2d 372, 373 (Ind. 1990) (noting that a court which must search the record and make up its own arguments because a party has presented them in perfunctory form runs the risk of being an advocate rather than an adjudicator).

Our review of the record indicates that Hill did not misrepresent the issue of custody on her food stamp application. And neither party directs us to any evidence showing that custody is required to obtain food stamps. Moreover, the question on the application regarding how many people live in the household is ambiguous. The Merriam Webster Online Dictionary defines "live" as "to occupy a home[,]" and it defines "household" as "those who dwell under the same roof and compose a fami-

ly; *also:* a social unit comprised of those living together in the same dwelling." MERRIAM-WEBSTER ONLINE DICTIONARY, *available at* http://www.m-w.com/cgi-bin/dictionary. Neither definition suggests that family members must occupy a home or live together full-time in order to constitute a household.

The food stamp application does not state that household members are required to live full-time in the household. Thus, an applicant could reasonably interpret·that question to mean that part-time residence is sufficient. *See, e.g., Griepenstroh v. State,* 629 N.E.2d 887, 891 (Ind.Ct. App.1994) (holding "conviction for perjury may not lie when a person truthfully answers a question subject to more than one reasonable interpretation or signs an ambiguous statement."), *trans. denied.* Indeed, a divorced parent can qualify for "head of household" status for income tax purposes where a child lives with the parent only part-time.[1]

It is undisputed that Hill considered herself to be the children's "primary caregiver" regardless of the dissolution court's custody order, and the evidence supports that understanding. It is also undisputed that Hill maintained a home where she regularly provided meals and otherwise cared for her children. At trial, Randy testified that both children spent the night with Hill, *on average,* three nights a week. And in its brief on appeal, the State concedes that T.H. spent the night with Hill "as often as four nights a week."

Hill has demonstrated prima facie error. We conclude that the State failed to prove beyond a reasonable doubt that Hill knowingly misrepresented any facts on her food stamp application. We hold that the evidence is insufficient to support Hill's conviction for welfare fraud in obtaining food stamps. And we reverse and remand to the trial court with instructions to vacate that conviction.

Affirmed in part, reversed in part, and remanded with instructions.

BROOK, C.J., and BAILEY, J., concur.

---

1. A divorced parent can qualify for "head of household" filing status for tax purposes if that parent paid more than half the cost of keeping up a home for the year and a child lived with the parent for more than half the year. *See* Internal Revenue Service, *The Digital Daily,* "Frequently Asked Questions," *available at* http://www.irs.gov/faqs/page/0,,id=15785,00.html.